EUGENE E. STOKES, Respondent, *v.* BARBER ASPHALT PAVING COMPANY, Appellant.

Negligence — statutory provision that all openings to elevator shafts, hoistways, etc., shall be protected by self-closing doors or hatchways — when such provision does not apply to opening only a few inches above the ground — erroneous refusal to charge as to contributory negligence.

1. In a common-law action to recover for negligence, where the court has not charged upon the subject of contributory negligence, it is substantial and prejudicial error to refuse defendant's request to charge: "That if the plaintiff was guilty of any contributory negligence, which was the proximate cause of his hurt or contributed to his hurt, then he cannot recover."

2. The provisions of the statute of New Jersey, known as chapter 64 of the Laws of 1904, which provides that "The openings of all hoistways, hatchways, elevators and well holes upon every floor of any place * * * shall be protected by good and sufficient trap doors, or self-closing hatches or safety catches or guard rails, at least three feet high, and shall be kept closed and protected all the time except when in actual use by the occupant of the building having the use and control of the same," does not apply to an opening in a platform on the ground floor, only a few inches deep, and just sufficient to receive the elevator when in place on the ground floor.

*Stokes* v. *Barber Asphalt Paving Co.*, 141 App. Div. 930, reversed.

(Argued December 16, 1912; decided January 14, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 28, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The plaintiff entered the employment of the defendant on or about the 27th day of June, 1906, and he was injured early in the evening of July 20, 1906, by being crushed beneath an elevator near which he was at work. This elevator was located in the yard, at the side of a building known as the "block plant," and consisted of an open platform which ran between four guide posts from the ground floor to the second story. It was oper-

ated by compressed air and was used for hoisting and lowering blocks and other heavy substances. Looking toward the building, this elevator stood just to the left of a doorway in which there were heavy double doors which opened outward, and were supported by strap hinges fastened by bolts. The weather had been excessively hot and for the purpose of getting a better circulation of air through the block plant, the foreman of the block department, whose name was Childrey, obtained permission from the superintendent to remove these two doors. Childrey called in the plaintiff, who was regarded a general handy man on machinery, and asked him to help in taking off these doors, for it was a job which one man could not perform. It was evidently thought that the doors could be lifted off their hinges, and for that purpose Childrey and the plaintiff secured a block and tackle. This plan proved unsuccessful, and then Childrey instructed the plaintiff to unscrew the nuts on the bolts which fastened the hinges to these doors. In order to relieve the bolts from any lateral strain, the left door, upon which the work was commenced, was moved to the proper angle and held up by means of straps suspended from the fall and tackle. With the door in this position, plaintiff was compelled to stand in the narrow space between the door and the elevator shaft for the purpose of unscrewing some of the nuts. This space has been roughly described by witnesses as a triangle about six inches wide at its apex, where the door and elevator came nearest together, and about three feet wide at its base or the point nearest the outer edge of the door. The head of the bolt in the part of the door nearest to the building was on the outside of the door so that the nut was on the inside. This nut was first removed by the plaintiff. Then he devoted his attention to the four bolts which had been driven from the inside to the outside of the door so that the nuts were on the outside. In order to take these off the plaintiff went into the space

between the door and the elevator, and while standing there in a partially bent position, with the middle of his body extended somewhat over into the unguarded elevator shaft, the elevator came down and crushed him, causing the injuries complained of. The plaintiff testified that when he was told by Childrey to take off the nuts the latter said, "I will remain here," and that he had supposed that Childrey was present until the elevator came down and the accident happened. The elevator was not operated by a regular conductor but by any one of the defendant's employees who had occasion to use it.

*Frederick W. Catlin* for appellant. No negligence was proven consisting of the violation of the statute. (*A. L. Co.* v. *Heins,* 141 Fed. Rep. 45.) The plaintiff assumed the risk of a dangerous situation thoroughly known to himself when the danger might have been avoided by the simple act of changing the position of the door before he began his work. He was not relieved from this assumption by the alleged conversation between himself and the foreman Childrey, previously made, in which Childrey is alleged to have promised, after the plaintiff had complained of some dangerous features about the elevator arrangements, that he "would have it attended to." (*Andrecsik* v. *N. J. Tube Co.,* 73 N. J. L. 664; *Rice* v. *Eureka Paper Co.,* 174 N. Y. 385; *Booth* v. *Litchfield,* 201 N. Y. 466; *Hempstock* v. *Lackawanna Iron Co.,* 98 App. Div. 332; *Spencer* v. *Haines,* 64 Atl. Rep. 970; *Cicalese* v. *L. V. R. R. Co.,* 69 Atl. Rep. 166; *Leaux* v. *City of New York,* 87 App. Div. 405.) Notwithstanding any promises Childrey may have made to the plaintiff "to have it attended to" or "to remain," he could not recover if it appeared that he was not in the exercise of due care at the time or was guilty of contributory negligence, and the court erred in refusing to dismiss the complaint on the ground that plaintiff had failed to show freedom from contributory negligence, and

in refusing the defendant's request to charge that if he was guilty of negligence which was the proximate cause of or contributed to his injury, he could not recover. (*Hugh* v. *Railroad Co.*, 100 U. S. 213; *Dist. of Columbia* v. *McElligott*, 117 U. S. 621; *Williams Cooperage Co.* v. *Headwick*, 159 Fed. Rep. 680; *Butcher* v. *Hyde*, 152 N. Y. 142; *Keenan* v. *B. C. R. R. Co.*, 145 N. Y. 348; *C. S. R. R. Co.* v. *Railroad Co.*, 149 N. Y. 51.)

*Arthur C. Train* for respondent. The defendant was guilty of negligence in violating the statute. (*Fitzwater* v. *Warren*, 206 N. Y. 355.) The plaintiff did not assume the risk arising from the defendant's violation of the statute, since the defendant had promised to safeguard the place in question and thus in any event had relieved plaintiff from the assumption of risk. (*Dowd* v. *Erie R. R. Co.*, 70 N. J. L. 451; *H. M. Co.* v. *Fullerton*, 69 Fed. Rep. 923; *Weber Wagon Co.* v. *Kehl*, 139 Ill. 644; *Hunstock* v. *L. I. & S. Co.*, 98 App. Div. 332.)

WERNER, J. The action is brought to recover damages for personal injuries under a New Jersey statute, known as chapter 64 of the Laws of 1904, which, so far as pertinent, provides that "The opening of all hoistways, hatchways, elevators and well-holes upon every floor of any place * * * shall be protected by good and sufficient trap doors or self-closing hatches or safety catches or guard rails, at least three feet high, and shall be kept closed and protected all the time except when in actual use by the occupant of the building having the use and control of the same."

The plaintiff relies upon this statute, and the defendant takes the position that it does not apply. We are inclined to agree with the contention of defendant's counsel. The statute was evidently intended to provide for the safeguarding of open hoistways, hatchways and elevators by means of self-closing hatches, safety catches and guard rails; and while these safety devices are required to be

placed upon "every floor of any place," coming within the provisions of the act, it is obvious that it does not relate to a place like that in which the plaintiff was injured. This was not an opening through a floor or hatchway to another floor or floors below, but simply an opening in the platform on the ground floor of sufficient depth to receive the elevator when in place on the first floor. The opening thus made was only a few inches deep and was obviously not the kind of a place which, under the provisions of this statute, was to be guarded by the means referred to. We think it was error, therefore, to receive the statute in evidence over the defendant's objection and exception.

But this view of the statute does not dispose of the plaintiff's cause of action, for the allegations of his complaint, no less than his proofs, make out a common-law cause of action; and we regard the evidence as entirely sufficient to create a question of fact for the jury upon the issues, whether the defendant was guilty of negligence, and the plaintiff free from contributory negligence. Had the case been fairly and fully submitted to the jury upon these two issues, we should feel bound to affirm the judgment. There is in the charge, however, an error so obvious and serious in its nature that we cannot overlook it without creating confusion in the law in cases of this character.

After the learned trial court had concluded the charge in chief, defendant's counsel requested the charge, "That if the plaintiff was guilty of any contributory negligence, which was the proximate cause of his hurt, or contributed to his hurt, then he cannot recover in this case." As the learned trial court had not even alluded to the subject of contributory negligence in the main charge, this request was both pertinent and proper, and should have been unequivocally granted. Instead of doing this the learned trial court charged that "The plaintiff was bound to exercise reasonable care; but he had a right, if you find

that he is telling the truth here, to rely upon the promise made by Mr. Childrey that he would stay there while he worked, and he had a right to rely upon the duty of the defendant to see that some notice of the moving of this elevator was given." Then, as if to emphasize the refusal to charge as defendant's counsel had requested, the court added, " You can take an exception to my refusal." If the court had in its main charge fairly submitted to the jury the question of plaintiff's freedom from contributory negligence, the request of defendant's counsel might have been safely denied upon the ground that the court had already charged upon that subject. This court frequently overlooks a refusal to charge a request that is technically correct because the charge in chief fairly presents the question. That is not this case, however, for the learned trial justice had not spoken upon the subject of plaintiff's contributory negligence when defendant's counsel made his request. As the case then stood, the defendant was entitled to this charge, unqualified by any reference to the New Jersey statute, or the promise said to have been made by Mr. Childrey that he would remain with the plaintiff while the latter was taking off these doors. The learned trial court's allusion to the statute and the testimony regarding Childrey's promise may have had the effect of confusing the jury in considering the plaintiff's rights and duties. Whether this is true or not, it was clearly a substantial right of the defendant to have the court charge, " That if the plaintiff was guilty of any contributory negligence, which was the proximate cause of his hurt, or contributed to his hurt, then he cannot recover," and the failure of the court to charge as requested is so serious an error that we cannot ignore it.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur; GRAY and CHASE, JJ., dissent.

Judgment reversed, etc.